# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Correy Peters, on behalf of
himself and all others similarly
situated,

              Plaintiff,

v.

Jim Lupient Oldsmobile
Company,

              Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 97-2349 ADM/AJB

---

Thomas J. Lyons, Jr., Esq., Consumer Justice Center, P.A., Maplewood, Minnesota, and Richard J. Doherty, Esq., Horwitz, Horwitz & Associates, Chicago, Illinois, appeared on behalf of Plaintiff.

Sarah E. Morris, Esq., Lind, Jensen & Sullivan, P.A., Minneapolis, Minnesota, appeared on behalf of Defendant.

---

The above-entitled matter came on for hearing before the undersigned United States District Judge on May 18, 1999, pursuant to Defendant's Motion for Summary Judgment. For the reasons set forth below, Defendant's motion is granted.

## I. BACKGROUND[1]

On April 25, 1997, Plaintiff Correy Peters ("Peters") purchased a used 1989 Ford Probe automobile from Defendant Jim Lupient Oldsmobile Company ("Lupient"). Lyons Aff. Ex. A. Along with the vehicle, Peters purchased 30-month credit life and credit disability insurance policies for $65.82 and $348.82 respectively. Id. Peters did not try to negotiate the premium for

---

[1]For purposes of this summary judgment motion, the factual background of this matter is set forth in a light most favorable to the Plaintiff.

FILED___ 5.27.99
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD __5.27.99__
DEPUTY CLERK _____

either policy because he "had no problem with" them. Peters Dep. at 62.

Peters signed a Retail Installment Contract ("Contract") which, among other things, indicated that the insurance premiums would be paid to one or more insurance companies. Lyons Aff. Ex. A. The Contract did not disclose that Lupient would retain a portion of the premiums as a commission on the sale of the policies. Id. Peters financed the transaction through an assignment of the Contract to TCF Financial Services, Inc. ("TCF") Id. The Contract contained a disclosure statement that itemized the total amount financed ($6,007.82), specified a 22.5 percent annual percentage rate, and described a total finance charge of $1,901.98 as "[t]he dollar amount credit will cost you." Id.

Lupient collected the premiums for the insurance policies on behalf of the American National Insurance Company ("American"). Lyons Aff. Ex. C at 4. American then paid Lupient commissions on the sale of the credit life and credit disability policies in the amounts of $26.33 and $156.97 respectively. Id. Lupient paid a portion of the commissions to Terry Rook, the business manager who handled Peters' purchase. Lehman Dep. at 42-43.

On October 21, 1997, Peters filed this lawsuit alleging violations of the Truth in Lending Act, 15 U.S.C. § 1638 ("TILA"), the Minnesota Motor Vehicle Retail Installment Sales Act, Minn. Stat. § 168.72 ("MMVRISA"), the Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 et seq. ("CFA"), and common law fraud. TCF repossessed the automobile in April or May of 1998 after Peters stopped making payments on the loan. Peters Dep. at 56-57. Peters never canceled the credit insurance despite knowing that he would be eligible for a refund of the unearned premium upon cancellation. Id. at 55-56.

## II. DISCUSSION

This is the third case before this Court in the past year which invites judicial scrutiny of the auto financing practices of a local automobile dealership under TILA. See Picht v. Stillwater Ford-Lincoln-Mercury, Inc., Civil No. 97-1839 ADM/JGL (D. Minn. Aug. 17, 1998); and Lindholt v. Walser Ford, Inc., Civil No. 97-2140 ADM/AJB (D. Minn. Sept. 25, 1998). Like the defendants in the two prior cases, Lupient is entitled to summary judgment of Peters' TILA claim because he has not adduced any proof of actual damages.

In response to a defendant's motion for summary judgment, the plaintiff may not simply rest on the allegations or denials of his pleadings, but must come forward with sufficient evidence to demonstrate a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Substantive law defines which facts are material and only disputes over facts that might affect the outcome of the case will defeat summary judgment. Id. A factual dispute is genuine if "a reasonable jury could return a verdict for the non-moving party." Id.

To establish that he has suffered actual damages as a proximate result of Lupient's alleged TILA violation, Peters must demonstrate that: (1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure statement been accurate, he would have sought out other insurance policies or a lower price; and (4) he would have actually obtained other policies or a lesser price." Anderson v. Rizza Chevrolet, Inc., 9 F. Supp. 2d 908, 913 (N.D. Ill. 1998). Peters has failed to point to any evidence in the record upon which a reasonable jury could conclude that, had he known Lupient was retaining a portion of the premiums as a commission, he would have sought out, and been able to obtain, different

3

insurance policies or a lower price. In fact, Peters concedes that "he does not currently have proof he could have gotten more favorable terms on a package elsewhere." See Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. at 9.

Peters' reliance upon Lopez v. Orlor, Inc., 176 F.R.D. 35 (D. Conn. 1997), does not save his claim. In Lopez, the court explained that the defendant's failure to disclose that it was retaining a portion of the "amount paid to others" listed on the sales contract "made it more difficult for consumers to compare prices and to use credit on an informed basis, contravening TILA's stated purpose." However, neither Peters nor the Lopez court offers a reasoned explanation why a plaintiff should be allowed to recover damages where he can not prove that, had the dealer made the disclosure, he would have looked elsewhere and been able to find more favorable terms for the product he purchased. If Peters would not have looked elsewhere and/or could not have obtained the insurance policies at a better price, then the fact that he was unaware Lupient was retaining a commission caused him no harm.

Additionally, the fact that Rooks is not an insurance agent and, therefore, may not be authorized to receive commissions on the sale of insurance policies in the State of Minnesota, does not establish a TILA violation. The present factual pattern is very different from the one in In re Brown, 134 B.R. 134 (Bankr. E.D. Pa. 1991)--the case upon which Plaintiff bases his argument. In that case, the court held that a debtor is entitled to rescind a contract pursuant to TILA where the creditor discloses a finance charge that violates state usury laws. Id. at 144-45. The debtor in Brown suffered actual damages as a result of the creditor's state law violation because he was forced to pay more interest to obtain credit than he would have had to pay otherwise. Here, on the other hand, there is no evidence that Peters would have obtained a better

4

credit arrangement from an agent licensed to sell insurance in the State of Minnesota.  Thus, to the extent Rooks violated state law by accepting a commission from American on the sale of insurance policies to Peters, the Court concludes that the violation was a trivial one that did not affect the cost of Peters' credit and therefore did not violate TILA.  As the <u>Brown</u> court explained, "not every, trivial violation or failure to accurately regurgitate state law in a TILA disclosure statement triggers a TILA violation."  <u>Id.</u> at 144.

This Court's jurisdiction over Peters' claims was based upon the federal question presented by TILA.  <u>See</u> 28 U.S.C. § 1331; 15 U.S.C. § 1601.  Along with federal question jurisdiction, this Court has supplemental jurisdiction to consider and adjudicate Plaintiff's state law statutory and common law claims.  <u>See</u> 28 U.S.C. § 1367.  "When federal claims are dismissed before trial, the district court has the discretion to dismiss state claims over which the court has assumed supplemental jurisdiction and, generally, the court should do so in all but the rarest of instances."  <u>Cemail v. Viking Dodge, Inc.</u>, 982 F. Supp. 1296, 1303 (N.D. Ill. 1997) (citing 28 U.S.C. § 1367(c)(3)); <u>see also</u> <u>Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills</u>, 141 F.3d 1284, 1287 (8th Cir. 1998).  Because Plaintiff's TILA claim has been dismissed, the Court does not assert supplemental jurisdiction over Plaintiff's state law claims.  Plaintiff's state law claims are dismissed without prejudice.

5

### III. CONCLUSION

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

Defendant's Motion for Summary Judgment [Docket No. 14] is **GRANTED IN PART** and **DENIED IN PART**.  Count I of Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE**; Counts II, III, and IV are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Ann D. Montgomery
UNITED STATES DISTRICT JUDGE

Dated: *May 27, 1999*

6

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

*This is a summary only. For specific information on the time limits for filing a Notice of Appeal, consult with your attorney and review the applicable federal civil and appellate procedure rules and statutes.*

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1.  Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2.  Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3.  Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4.  Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.